**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HARRISON DIVISION**

**NATHAN LIPPE**                                                                 **PLAINTIFF**

**V.**                                        **CASE NO. 3:21-CV-03043**

**STONE BANK;**
**MARVIN SUTTERFIELD;**
**and JAMES JOHNSON**                                            **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are three Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by separate Defendants James Johnson (Doc. 137), Marvin Sutterfield (Doc. 140), and Stone Bank (Doc. 147).[1] Also before the Court is Stone Bank's Motion to Strike (Doc. 145).[2] Plaintiff Nathan Lippe opposes the Motions.

For the reasons stated below, Johnson's and Sutterfield's Motions to Dismiss (Docs. 137 & 140) are **GRANTED** and all claims against them are **DISMISSED**; Stone Bank's Motion to Dismiss (Doc. 147) is **GRANTED IN PART AND DENIED IN PART**; and Stone Bank's Motion to Strike (Doc. 145) is **DENIED**.

Having so ruled, the following pending motions are **MOOT**: Johnson's Motion for Summary Judgment on Conversion Claim (Doc. 142), Stone Bank's Third Motion for Partial Summary Judgment (Doc. 168), Stone Bank's Fourth Motion for Partial Summary

---

[1] In deciding the Motions to Dismiss, the Court considered: the Second Amended Complaint (Doc. 121), the Motions (Docs. 137, 140, 147), Briefs in Support (Docs. 138, 141, 148), Plaintiff Nathan Lippe's Responses in Opposition (Docs. 171, 173, 179), and Lippe's Briefs in Support (Docs. 172, 174, 180).

[2] In deciding the Motion to Strike, the Court considered: Stone Bank's Motion (Doc. 145) and Brief in Support (Doc. 146) and Lippe's Response in Opposition (Doc. 175) and Brief in Support (Doc. 176).

1

Judgment (Doc. 200), Johnson's Motion for Summary Judgment on Felony Tort Claim (Doc. 208), and Lippe's Motion for Extension of Time to File Response to Johnson's Motion for Summary Judgment on Felony Tort Claim (Doc. 215).

## I.  BACKGROUND

Lippe is a farmer and former customer of Stone Bank. Lippe began a lending relationship with the Bank in 2016. Stone Bank issued several business loans to Lippe secured by his farm equipment and livestock and a home loan secured by Lippe's personal residence. This lawsuit stems from three disputes that developed between Lippe, Stone Bank, and the Bank's employees.

The first dispute relates to a loan Lippe obtained from Stone Bank in June 2018 ("the Farm Loan"), which was guaranteed by the United States Department of Agriculture Farm Service Agency (FSA). The Farm Loan refinanced six of Lippe's existing business loans and used Lippe's cattle and farm equipment as collateral. Lippe alleges two employees of Stone Bank, James Johnson and Marvin Sutterfield, engaged in a "continuing criminal enterprise," (Doc. 121, ¶ 14), to unlawfully coerce Lippe into applying for the Farm Loan despite knowing he did not qualify for an FSA-backed loan. According to Lippe, at all times relevant to this lawsuit, Johnson was Stone Bank's Vice President, and Sutterfield was Stone Bank's Chief Guaranteed Farm Loan Consultant and held ownership interest in the Bank.

The second dispute involves Stone Bank's alleged conversion of Lippe's home insurance proceeds. In September 2019, Lippe's personal residence was destroyed in a fire. Lippe alleges Stone Bank fraudulently obtained the insurance proceeds from that fire and then applied those proceeds to pay down Lippe's home loan, the Farm Loan, an

unsecured loan, and a loan secured by cattle and equipment. Lippe alleges the Farm Loan and the cattle loan were not secured by the mortgage against Lippe's residence, and the unsecured loan was not delinquent. As a result, Stone Bank's use of the insurance proceeds to pay those debts was done without Lippe's authorization and constituted conversion of his property.

The third and final dispute involves allegations that Johnson, while he was serving as Lippe's loan manager, requested and received several personal loans from Lippe. Lippe contends Johnson never repaid those loans, never had any intention of repaying them, and his actions constitute theft of property. Lippe further alleges that Johnson was "engaged in a game of 'pay to play,'" wherein Johnson was "coercing Plaintiff to give Johnson money as a condition to obtain loans from Stone Bank." (Doc. 121, ¶ 20).

Lippe first filed suit against Stone Bank and Johnson in the Circuit Court of Boone County on July 9, 2020. There, Lippe alleged breach of contract; negligent hiring, supervision, and retention; breach of fiduciary duty; and conversion. (Doc. 121-20, pp. 7–10). Stone Bank filed a counterclaim against Lippe seeking a judgment to satisfy the amount then in default on the Farm Loan and to foreclose on assets that secured the Farm Loan. On November 30, 2020, Lippe's claims against Stone Bank in the first lawsuit were voluntarily dismissed without prejudice. The parties then agreed to a consent judgment that resolved Stone Bank's counterclaim in the Bank's favor. The consent judgment (Doc. 149-2) was issued by the state court on December 16, 2020. On February 5, 2021, Lippe satisfied the consent judgment by paying Stone Bank $523,755.56.

The instant lawsuit was filed on May 18, 2021, again in the Circuit Court of Boone County, Arkansas, and then removed to this Court by Defendants. Following removal, the

3

separate Defendants quickly brought motions to dismiss and motions for a more definite statement. Lippe filed a First Amended Complaint (Doc. 33), which mooted those motions (and Defendants then refiled their motions). The First Amended Complaint did not clearly state any cause of action but principally brought claims under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act and Arkansas's felony tort statute.

At a case management hearing held on November 29, 2021, the Court explained to Lippe's counsel that the First Amended Complaint was poorly pleaded: it was disorganized and confusing, failed to put the separate Defendants on notice of the causes of action against them, and failed to plead fraud with particularity. The Court ultimately gave Lippe the opportunity to amend his complaint one more time, with the admonition that Lippe must address the issues identified in Defendants' motions, including setting out detailed separate counts against each defendant and pleading with particularity those claims sounding in fraud.

Lippe filed his Second Amended Complaint (Doc. 121) on January 10, 2022. The Second Amended Complaint—which is now the operative complaint in this case—brings three causes of action. Count One, brought under Arkansas's felony tort statute, alleges the conduct of Stone Bank, Johnson, and Sutterfield constitutes the felonies of money laundering, theft of property, and obtaining a signature by deception. Counts Two alleges Stone Bank and Johnson converted Lippe's property. Count Three alleges Stone Bank is liable for Johnson's tortious conduct under the theories of negligent hiring, supervision, and retention.

The Court previously dismissed Count One as against Stone Bank on *res judicata* grounds. *See* Doc. 199. The Court now considers the sufficiency of the remaining claims against the three separate Defendants.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of a complaint's factual allegations as true and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

The pleading standard is higher for claims sounding in fraud. Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud." This "requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). The complaint must "specify[] the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.'" *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (quoting *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009)). "Particularly in cases with multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018) (quoting *Streambend*, 781 F.3d at 1013).

To decide whether a claim sounds in fraud and requires Rule 9(b) pleading, the Eighth Circuit follows a "a pleading-specific inquiry," which looks to both "the elements of the claims asserted" and, where there is no explicit fraud element in the claim asserted, the specific allegations forming the cause of action. *Streambend*, 781 F.3d at 1012. Under this inquiry, "[a] claim may sound in fraud even though it is brought under a statute that also prohibits non-fraudulent conduct." *Olin*, 910 F.3d at 1075.

### III. DISCUSSION

As an initial matter, the Court notes that while Lippe followed the Court's instruction to include separately pleaded counts in the Second Amended Complaint, the counts themselves are conclusory and unadorned by specific factual allegations. *See* Doc. 121,

pp. 22–23. To find those facts, the Court and Defendants must hunt through 159 meandering paragraphs and attempt to match Lippe's disjointed factual allegations with the separately pleaded counts. Lippe's briefing on these Motions is similarly unhelpful, failing to direct the Court to the specific paragraphs that correspond to the elements of each cause of action.

The Second Amended Complaint does "not contain a simple, concise, and direct statement" of the claims against Defendants and therefore largely fails to put Defendants on "'fair notice' of the nature of the claim[s]" against them. *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 665 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556 n.3). Much of the Second Amended Complaint could be dismissed on this basis alone. Nevertheless, the Court will address each of Lippe's claims, attempting—with little help from Lippe's counsel—to understand each cause of action he attempts to plead.

## A. Count One

Count One of the Second Amended Complaint brings claims under Arkansas's felony tort statute, which provides: "Any person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law may file a civil action to recover damages based on the conduct." Ark. Code Ann. § 16-118-107(a)(1). Lippe alleges Johnson and Sutterfield "are guilty of money laundering under A.C.A. 5-42-204" and "of obtaining a signature by deception in violation of A.C.A. §5-37-210." (Doc. 121, ¶¶ 145 & 148). Lippe further alleges Johnson "is guilty of theft of property under A.C.A §5-36-103(a)(1) and (a)(2)." *Id.* at ¶ 146. The Court has carefully reviewed the Second Amended Complaint and the attached exhibits and finds Lippe fails to state a claim against either Johnson or Sutterfield under Count One.

### 1. Money Laundering

The first allegation in Count One is that both Johnson and Sutterfield are guilty of money laundering. The Court first notes that money laundering is a "victimless" crime. *See United States v. Harper*, 972 F.2d 321, 322 (11th Cir. 1992). Rather than harming any particular individual, the victim of money laundering is "society at large." *United States v. Napoli*, 179 F.3d 1, 7 (2d Cir. 1999). Arkansas's felony tort statute requires the plaintiff be "injured or damaged by reason of" the defendant's felonious conduct, and the statute's formal title is "Civil action by crime victim." Ark. Code Ann. § 16-118-107(a)(1). Lippe could be harmed by conduct that would constitute a predicate criminal offense for purposes of money laundering, but Lippe would not be harmed by the money laundering itself. Therefore, he cannot recover civil damages under the felony tort statute for being the victim of money laundering.

Even assuming Lippe could recover under the felony tort statute for Johnson and Sutterfield's alleged commission of money laundering, the Second Amended Complaint does not contain sufficient facts to state such a claim. The elements of money laundering under Arkansas law are as follows:

> (a) A person commits the offense of criminal use of property or laundering criminal proceeds if the person knowingly:
>
> > (1) Conducts or attempts to conduct a transaction involving criminal proceeds that were derived from any predicate criminal offense, or that were represented to be criminal proceeds from any predicate criminal offense, with the intent to:
> >
> > > (A) Conceal the location, source, ownership, or control of the criminal proceeds;
> > >
> > > (B) Avoid a reporting requirement under state or federal law; or

(C) Acquire any interest in the criminal proceeds; or

(2) Uses or makes available for use any property in which he or she has any ownership or lawful possessory interest to facilitate a predicate criminal offense.

Ark. Code Ann. § 5-42-204.

Lippe's brief in response to Sutterfield's Motion to Dismiss directs the Court—without any further explanation or substantive argument—to the allegations in 27 paragraphs of the Second Amended Complaint that mention Sutterfield's name. *See* Doc. 172, p. 4. Lippe's brief in response to Johnson's Motion is even more deficient, arguing only that Johnson's Motion "ignores pages of facts that specifically articulate what Johnson did, how he did it, to whom he did it, and when he did it." (Doc. 180, p. 1).

There are no allegations in the Second Amended Complaint that Johnson or Sutterfield made or attempted to make a transaction using funds from a predicate criminal offense. Lippe's broad contention is that Johnson and Sutterfield were involved in a criminal enterprise "to steer customers, like Plaintiff, into an FSA government backed loan for which Plaintiff did not qualify, and to convert money from Plaintiff in violation of the law." (Doc. 121, ¶ 99). Construing the claims liberally, Lippe may be alleging that Johnson and Sutterfield's actions in steering Lippe into the Farm Loan were somehow a predicate criminal offense for the purposes of money laundering. But even assuming Lippe had sufficiently alleged those actions were a criminal offense—which he has not—Lippe does not allege Johnson or Sutterfield conducted a subsequent transaction with the proceeds of that "crime" with the intent to conceal the origin of those funds, avoid a reporting requirement, or acquire an interest in the funds. The only proceeds Lippe alleges Johnson and Sutterfield received from their "scheme" is an increase in their commission pay from

Stone Bank, and there is no allegation those commission payments were then used in a subsequent transaction.

Lippe further alleges Sutterfield was improperly preparing lending documents in violation of a Consent Order issued by the United States Office of the Comptroller of the Currency. Taking that accusation as true, Sutterfield violated the Consent Order and could be subject to sanctions by the Comptroller. But it is not clear that act would be a predicate *criminal* offense for purposes of the money laundering statute. Even if it were, it is not alleged Sutterfield's violation of the Consent Order garnered him criminal proceeds with which he then conducted a subsequent transaction.

Money laundering can also be committed by using any property in which the defendant has any ownership or possessory interest to facilitate a predicate criminal offense. Ark. Code Ann. § 5-42-204(a)(2). Lippe alleges Sutterfield has an ownership interest in Stone Bank. But it remains unclear from the complaint what predicate criminal offense—apart from generalized allegations of fraud—Sutterfield might have used Stone Bank to facilitate. Lippe simply comes nowhere close to pleading that Johnson or Sutterfield committed money laundering.[3]

### 2. Obtaining a Signature by Deception

The Second Amended Complaint likewise does not contain sufficient allegations that Johnson or Sutterfield obtained Lippe's signature by deception. "A person commits the offense of obtaining a signature by deception if, with purpose to defraud, he or she

---

[3] Johnson is separately accused of theft for allegedly borrowing money from Lippe without any intention of repaying those loans. If properly pleaded, theft could be a predicate criminal offense for purposes of money laundering. But nowhere does Lippe contend Johnson conducted a transaction with those borrowed funds in order to conceal their source or avoid a reporting requirement.

obtains by deception the signing or execution of a written instrument affecting the pecuniary interest of any person." Ark. Code Ann. § 5-37-210. Because this crime requires "purpose to defraud," it is subject to the heightened pleading standards under Rule 9(b) and must be pled with particularity. *See Streambend*, 781 F.3d at 1012.

Lippe alleges "Johnson and Sutterfield, for the benefit of and on behalf of Stone Bank, initiated a U.S.D.A. Farm Service Agency guaranteed loan application for the signature of Plaintiff." (Doc. 121, ¶ 41). Lippe further alleges Johnson and Sutterfield— knowing Lippe did not qualify for an FSA-backed farm loan—"did not provide Plaintiff with an opportunity to read nor review the information placed in Plaintiff's farm loan application."[4] *Id.* at ¶ 52. According to Lippe, Johnson and Sutterfield's motive was "to advance fraudulent lending to farm borrowers while earning increased employee and consultant loan commission profits, and while increasing profits for Defendant Stone Bank upon the sale of each U.S.D.A. guaranteed loan to the secondary investor markets." *Id.* at ¶ 51.

While the loan documents attached to the Second Amended Complaint contain Lippe's signature, Lippe fails to plead when he signed them, and which precise signature was obtained by coercion. Lippe also fails to specify when each misrepresentation by Johnson and Sutterfield was made, what the precise content of those misrepresentations were, and why those statements were false. This section of the Second Amended Complaint also oscillates between alleging Johnson and Sutterfield took certain actions

---

[4] Lippe does not allege his signature was forged by Johnson or Sutterfield. Lippe's own failure to read documents before signing does not plausibly allege fraud or coercion. "[O]ne is bound to know the content of a document one signs." *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 855 (8th Cir. 2014), citing *Banks v. Evans,* 347 Ark. 383, 64 S.W.3d 746, 751 (2002).

and simply alleging Stone Bank itself took certain actions. *See, e.g.*, *id.* at ¶ 41 ("Stone Bank made false representations to Plaintiff during the application process when Defendant Stone Bank stated that Plaintiff did in fact qualify for the farm loan guarantee program and that Plaintiff would get better terms and conditions that were not a part of Plaintiff's conventional loan."). These allegations fail to put Johnson or Sutterfield on notice of the specific accusations of fraud against each of them.

Lippe has also not plausibly alleged Johnson or Sutterfield misled him with the criminal purpose to defraud. Lippe pleads that Johnson and Sutterfield's intent was to earn increased commissions from Stone Bank and increase Stone Bank's profits by selling additional FSA-backed loans. Lippe admits he received the Farm Loan as promised. Undue pressure or incentive from one's employer to issue a particular loan type does not equate to criminal intent to defraud the borrower. If Johnson or Sutterfield had the purpose to defraud anyone under these alleged facts, it would have been the United States government, not Lippe.

### 3. Theft of Property

Lippe also seeks damages under the felony tort statute for alleged theft of property by Johnson. This appears to refer to the allegations in the Second Amended Complaint that Johnson borrowed money from Lippe without intending to repay those loans. But these allegations sound in contract, not criminal law, and fail to state a claim for relief under the felony tort statute.

While fraud is not an element of the crime of theft, Lippe alleges Johnson stole from him by fraudulently misrepresenting his intent to repay personal loans. Under a pleading-specific inquiry, this claim is subject to heightened pleading under Rule 9(b).

*See Streambend*, 781 F.3d at 1012; *see also Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022) ("Because [Plaintiffs'] claims of civil theft and unjust enrichment 'sound in fraud,' they are subject to Rule 9(b)'s requirements.").

In Arkansas, "A person commits theft of property if he or she knowingly:

(1) Takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property; or

(2) Obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property.

Ark. Code Ann. § 5-36-103(a). Criminal theft requires "the specific intent to deprive the owner of [his or her] property." *Hester v. State*, 2020 Ark. App. 571, 5 (2020).

Lippe alleges that "[o]n at least seventy-five (75) different occasions from December of 2018 through July of 2019, Johnson requested that Plaintiff make personal 'loans' to Johnson," and "unbeknownst to Plaintiff, Johnson never had any intention of repaying any 'loans', but instead engaged in a game of 'pay to play', by coercing Plaintiff to give Johnson money as a condition to obtain loans from Stone Bank." (Doc. 121, ¶¶ 19–20). Lippe attaches to the Second Amended Complaint text message conversations between him and Johnson where Johnson requests loans and promises to repay them.  Lippe goes on to allege he was "delayed farm loan servicing unless or until Plaintiff made a personal loan to Johnson." *Id.* at ¶ 60. He also alleges "[e]vidence of Defendant Johnson's extortion is contained in text messages from Defendant Johnson to Plaintiff." *Id.* at ¶ 92.

Lippe's conclusory descriptions of Johnson's conduct as "theft" are insufficient to state a claim under either Rule 8(a) or Rule 9(b). Lippe repeatedly describes his transactions with Johnson as "personal loans." *See* Doc. 121, ¶¶ 28, 60, 100, 107, 109,

111, 113, 117, 120, 121, 126. Lippe also refers to Johnson's actions as "theft" and "stealing." While the Court must accept all of Lippe's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Under Rule 12(b)(6), calling something theft does not make it theft.

The text messages between Johnson and Lippe support Lippe's description of these transactions as personal loans. The messages show the men shared a friendship wherein Johnson repeatedly asked to borrow money to pay for personal obligations, such as the bill for his father's assisted living center. Lippe was receptive to these requests and often obliged. While these personal loans appear highly inappropriate given Johnson's position as Lippe's loan manager, the messages themselves do not show Johnson was intending to steal from Lippe. The allegations show a contractual relationship that was allegedly breached when Johnson failed to repay Lippe. While Lippe brought—and voluntarily dismissed—a breach of contract action against Johnson in his first lawsuit, he has chosen to forgo a contract claim here.[5]

Lippe's theft allegations also fail Rule 9(b)'s requirement "to state the who, what, when, where, and how" of a claim sounding in fraud. *Summerhill*, 637 F.3d at 880. Lippe's theft allegations are specific in certain ways: he alleges Johnson borrowed money from him, and the text messages fill in some of the specific amounts and dates of those loans. However, nowhere does the Second Amended Complaint lay out each loan Lippe contends was fraudulently obtained by Johnson with a false promise to repay Lippe, the

---

[5] The Court makes no ruling on whether the allegations in the Second Amended Complaint would sufficiently state a claim for breach of contract against Johnson, had such a claim been advanced.

date on which the funds were transferred to Johnson, the date of each misrepresentation by Johnson, and the precise content of those misrepresentations. Certain of these details can be cobbled together by carefully examining the text messages between Johnson and Lippe (which appear incomplete and are not in chronological order). But a "primary purpose" of Rule 9(b)'s particularity requirement "is to facilitate a defendant's ability to respond to and to prepare a defense to a plaintiff's charges." *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985). The guesswork required to understand Lippe's theft allegations belies this purpose.

Lippe also fails to sufficiently plead Johnson's "specific intent to deprive [Lippe] of [his] property." *Hester v. State*, 2020 Ark. App. 571, 5 (2020). Although Rule 9(b) contains a carveout allowing intent to "be averred generally," it nevertheless "requires more than a simple allegation that a defendant had fraudulent intent." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). A plaintiff must "plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (quoting *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987)).

Lippe points to no specific facts to support his conclusory allegation that Johnson "never had any intention of repaying any 'loans'" and therefore possessed an intent to steal from him. *See id.* at ¶ 20. This naked assertion fails to create a "strong inference" that Johnson—by borrowing money from a friend but not repaying that friend on schedule—possessed the specific intent to steal.

Lippe further undermines the coherence of his theft allegations by pleading that Johnson was "deceiving Plaintiff into 'loaning money' to Defendant Johnson which

Defendant Johnson never intended to repay, *in exchange for helping Plaintiff get loans from Defendant Stone Bank*." (Doc. 121, ¶ 89) (emphasis added). Taking this allegation as true, Johnson was somehow stealing from Lippe but—in exchange for those *stolen* funds—was giving Lippe valuable consideration in the form of loans from Stone Bank. This may allege some type of malfeasance by Johnson (such as a violation of state or federal banking laws), but it does not adequately plead theft of property. [6]

## B. Count Two

Count Two of the Second Amended Complaint accuses both Johnson and Stone Bank of conversion. Under Arkansas law, "[c]onversion is the exercise of dominion over property in violation of the rights of the owner or person entitled to possession with the specific intent to dominate or control property claimed by another." *Ernest F. Loewer, Jr. Farms, Inc. v. Nat'l Bank of Ark.*, 316 Ark. 54, 58 n.3 (1994).

Count Two states that Lippe "had property (i.e. money) that he owned" and "Johnson and Stone Bank intentionally took and /or exercised dominion or control over Plaintiff's property in violation of Plaintiff's rights." (Doc. 121, ¶¶ 151–52). Lippe's Response to Stone Bank's Motion to Dismiss explains that his conversion claim is "based

---

[6] At one point the Second Amended Complaint alleges "Johnson used his position and authority at Stone Bank to steal tens of thousands of dollars from Plaintiff's deposit accounts for the purpose of Johnson's personal use and enjoyment." (Doc. 121, ¶ 21). It is unclear whether this allegation is referring to the same personal loans Johnson borrowed from Lippe or some other amount Johnson allegedly stole directly from Lippe's bank accounts. Later in the Second Amended Complaint, in the context of discussing the misapplication of his home insurance proceeds, Lippe alleges Stone Bank itself issued an "unsecured loan . . . to Defendant James Johnson under the name of Plaintiff whereby Defendant Johnson used the proceeds for his personal and private use." (Doc. 121, ¶ 76). These two paragraphs fail to plead sufficient facts to put either Stone Bank or Johnson on notice of the specific allegations against them and fail to plausibly plead the elements of theft or conversion of property.

on taking the Plaintiff's insurance proceeds for current loans and taking fees for loans that the Plaintiff was unqualified for." (Doc. 174, p. 5). These claims involve allegedly fraudulent misrepresentations and are therefore subject to Rule 9(b)'s heightened pleading standard. *See Streambend*, 781 F.3d at 1012; s*ee also Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 629 (2d Cir. 2020) (finding that a claim for conversion involving a fraudulent misrepresentation is subject to Rule 9(b) pleading). Count Two fails to state any claim for conversion against Johnson and fails to state a claim against Stone Bank for conversion of loan fees. However, Count Two plausibly pleads that Stone Bank converted Lippe's home insurance proceeds.

Under both Rule 8(a) and Rule 9(b), Lippe fails to state a claim for conversion against Johnson and Stone Bank for collecting loan fees from Lippe after allegedly coercing Lippe to take out loans he did not qualify for. First, the phrase "loan fees" does not appear in the Second Amended Complaint. Lippe alleges that "Defendants Johnson and Sutterfield intentionally used inaccurate information to steer Plaintiff's farm loans in (sic) the U.S.D.A. guaranteed program, for which Plaintiff did not qualify, to advance fraudulent lending to farm borrowers *while earning increased employee and consultant loan commission profits*." (Doc. 121, ¶ 510) (emphasis added). This alleges Stone Bank was paying Johnson and Sutterfield increased commissions. It does not allege Defendants were collecting fees *from* Lippe and thereby converting his property. Second, Lippe fails to allege when each fraudulent misrepresentation was made, who made each misrepresentation (apart from alternating between accusing Johnson, Sutterfield, and Stone Bank itself), or the content of those misrepresentations.

17

Lippe has not argued Count Two's generalized conversion claims include the allegation that Johnson borrowed money from Lippe without intending to repay him. Nevertheless, the Court will liberally construe the Second Amended Complaint as including this claim in Count Two. As explained above, however, these allegations sound in contract, not in tort or criminal law. They amount only to Johnson failing to repay thousands of dollars in personal loans, and "[a] mere debt obligation sounding in contract . . . does not constitute conversion." *JS Ints., Inc. v. John Hafner & Assocs.*, 2017 WL 5653873, at *2 (E.D. Ark. Feb. 10, 2017) (citing *L.L. Cole & Son, Inc. v. Hickman*, 282 Ark. 6, 9 (1984)); *see also Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1060–61 (C.D. Cal. 2015) (finding that "conversion is not the appropriate claim for Plaintiffs to collect the outstanding balance allegedly owed" to them under "the parties' oral contract"); *Lappe & Assocs., Inc. v. Palmen*, 811 S.W.2d 468, 471 (Mo. Ct. App. 1991) ("Ordinarily, a general debt does not give rise to a cause of action for conversion.").[7]

Moreover, Lippe fails to plead his allegations of unpaid personal loans with particularity, leaving Johnson to guess as to which specific loans were obtained with misrepresentations, when those misrepresentations and loans were made, and why Johnson's statements were false. Lippe therefore fails to plead Johnson committed conversion by failing to repay personal loans.

Lippe also alleges Stone Bank fraudulently converted his home insurance proceeds after his residence was destroyed in a fire on September 9, 2019. Lippe alleges

---

[7] A tort claim may substitute for a contract claim where the breach of contract is accompanied by "an affirmatively wrongful act (misfeasance)." *Hickman*, 282 Ark. at 9. While the Second Amended Complaint is littered with conclusory allegations that Johnson engaged in wrongful conduct, no such acts are sufficiently pled with respect to Johnson's failure to repay the money he borrowed from Lippe.

that, at the time of the fire, his home mortgage had a principal balance of $91,794.88 and was not cross-collateralized with his Farm Loan. *See* Doc 121, ¶ 66. However, Lippe also alleges that—despite him making payments on his mortgage—it "had already been paid off with the proceeds of the $510,000" Farm Loan. *Id.* at ¶ 67. This allegation contradicts the promissory note attached to the Second Amended Complaint, which does not list Lippe's home loan as one of the loans being refinanced by the Farm Loan. *See* Doc. 121-10.

According to Lippe, the day after the fire, Farmers Insurance requested from Stone Bank "a mortgage payoff amount on Plaintiff's residential mortgage," and "Stone Bank faxed a response containing a payoff amount of $698,097.09." *Id.* at ¶¶ 68–69. On September 18, "Farmers Insurance Exchange, in reliance on the claim of Stone Bank, sent a check to Defendant Stone Bank in the amount of $183,000.00," which Stone Bank then used "to payoff certain loans owed by Plaintiff to Stone Bank that, upon information and belief, had already been paid off and consolidated into the FSA loan." *Id.* at ¶¶ 68–69. Lippe alleges this was done without his consent and was a wrongful conversion of his insurance proceeds.[8]

Stone Bank argues this claim is self-contradictory and should be dismissed for failure to plausibly state a claim. Indeed, the following paragraph is particularly confusing:

> 70. Defendant Stone Bank did not inform Farmers Insurance that the residence had already been paid off by the FSA loan proceeds, but instead stated the payoff was $698,097.09, instead of the actual balance due on Plaintiff's personal residence of $91,794.88.

---

[8] It is not alleged in the Second Amended Complaint that Johnson is the bank employee who allegedly misapplied the insurance proceeds after Lippe's home burned down.

*Id.* at ¶ 70. Here, Lippe alleges both that his home loan had been completely paid off by the Farm Loan but also that there was a remaining balance on his home loan.

But while the allegation is poorly pled, Lippe does state a claim for conversion against Stone Bank. Lippe specifically identifies the party—Stone Bank—who made a false representation to his insurance company, the date and content of that false representation, the property allegedly converted (his home insurance proceeds), and the four loans those insurance proceeds were allegedly used to pay down in violation of Lippe's property rights. Despite Lippe presenting contradictory allegations as to the status of his home loan, he includes sufficient facts to allege Stone Bank converted his property. Count Two as against Stone Bank therefore survives the Bank's Motion to Dismiss.

## C. Count Three

Count Three brings a claim for negligent hiring, supervision, and retention against Stone Bank, seeking to hold the Bank liable for Johnson's allegedly tortious conduct. *See* Doc. 121, ¶¶ 154–56. Under Arkansas law, "employers are subject to direct liability for the negligent hiring, retention, or supervision of their employees when third parties are injured by the tortious acts of unfit, incompetent, or unsuitable employees. This must be established by proving that the employer knew, or in the exercise of ordinary care should have known, that its employee's conduct would subject third parties to an unreasonable risk of harm." *Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 84 Ark. App. 93, 100 (2003) (citing *Sparks Reg'l Med. Ctr. v. Smith*, 63 Ark. App. 131 (1998)).

Lippe alleges the following facts relevant to Count Three in the Second Amended Complaint:

20

24. Johnson became a Stone Bank loan officer on about June of 2014. Prior to June of 2014, Johnson served in a similar bank officer position in Arkansas.

25. Upon information and belief, Johnson was removed from his previous bank position due to fraud and theft from bank customers.

26. Upon information and belief, when Stone Bank hired James Johnson, it knew or should have known that James Johnson was a thief.

27. Beginning in May of 2018, and unbeknownst to Plaintiff, Johnson engaged in multiple acts of (a) theft (b) federal loan application false statements, (c) coercion, and (d) consumer financial violations. The specifics of these acts are described herein.

28. Specifically, in text messages to Plaintiff, from December 2017 to July 23, 2019, Johnson used his Stone Bank issued cell phone to send personal loan requests to Plaintiff for use and benefit of Stone Bank and Johnson.

(Doc. 121, p. 5).

As explained above, Lippe has failed to adequately plead that Johnson committed tortious conduct by stealing or converting Lippe's property.[9] Because Lippe cannot plead tortious conduct by Johnson, he necessarily cannot plead that the Bank is directly liable for Johnson's tortious conduct. *See U.S. Bank Nat. Ass'n ND v. Elender Escrow, Inc.*, 2011 WL 5857029, at *10 (E.D. Ark. Nov. 21, 2011) ("The Court has already found that Plaintiff's allegations against Brown were insufficient to state a claim of fraud against him. Thus, PrimeLending cannot have been negligent in hiring or supervising Brown."). Count Three therefore fails to state a claim.

---

[9] Assuming federal loan application false statements, coercion, and consumer financial violations, *see* Doc. 121, ¶ 27, could be properly brought as tort claims, Lippe has neither pleaded them as separate claims nor included sufficient factual allegations to support such claims.

### D. Motion to Strike

Stone Bank moves pursuant to Federal Rule of Civil Procedure 12(f) to strike "from the Second Amended Complaint all allegations regarding the 2010 OCC Consent Order and further striking Exhibit 1 attached to the Second Amended Complaint." (Doc. 146, p. 3). The 2010 Consent Order (Doc. 121-1) was an agreement between Ozark Heritage Bank—now Stone Bank—and the Comptroller of the Currency of the United States of America. "[W]ithout admitting or denying any wrongdoing," the Bank agreed to the Consent Order to avoid the Comptroller from "initiat[ing] cease and desist proceedings against Ozark Heritage Bank . . . for unsafe or unsound banking practices relating to, among other issues, credit risk management and loan portfolio management." (Doc. 121-1, p. 39). Lippe alleges in the Second Amended Complaint that "[i]n March of 2010, the Office of the Comptroller of the Currency ('OCC') determined that Ozark Heritage Bank was operating in an unsafe and unsound manner" and that "[t]he bank entered a Consent Order with the OCC dated August 24, 2010." (Doc. 121, ¶¶ 3–4).

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[S]triking a party's pleadings is an extreme measure, and, as a result, . . . '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury L. Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977)).

Stone Bank argues the 2010 Consent Order and related allegations in the Second Amended Complaint should be stricken because Stone Bank was no longer subject to the 2010 Consent Order during the time period covered in the Second Amended

Complaint. *See* Doc. 146, pp. 2–3. Lippe counters that the 2010 Consent Order "is important to the Second Amended Complaint as background information about the Defendants, to demonstrate a lack of mistake on the part of the Defendants with respect to dealing with bank regulators, and to demonstrate that the Defendants knew or should have known that there are strict regulations for running a bank." (Doc. 176, p. 3).

The Court finds the 2010 Consent Order is not "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). The 2010 Consent Order is evidence of prior conduct by Stone Bank that is relevant to Lippe's allegations that the Bank knowingly mismanaged his loan portfolio. Accordingly, the Court declines to strike the 2010 Consent Order and the related allegations in the Second Amended Complaint.

## IV. CONCLUSION

To summarize, Lippe fails to state any claims against Johnson or Sutterfield. He also fails to state a claim under Count Three against Stone Bank. Lippe has now had three opportunities to plead these allegations, and his latest attempt—despite the Court's efforts to piece together a cause of action for him—still fails to get past the plausibility threshold. The sole remaining cause of action in this case is Lippe's claim against Stone Bank under Count Two for conversion of his home insurance proceeds and damages related thereto.

**IT IS THEREFORE ORDERED** that:

- Separate Defendant Johnson's Motion to Dismiss (Doc. 137) is **GRANTED**, and the Second Amended Complaint is **DISMISSED** as against Johnson.

- Separate Defendant Sutterfield's Motion to Dismiss (Doc. 140) is **GRANTED**, and the Second Amended Complaint is **DISMISSED** as against Sutterfield.

-  Separate Defendant Stone Bank's Motion to Dismiss (Doc. 147) is **GRANTED IN PART AND DENIED IN PART**. Count Three of the Second Amended Complaint is **DISMISSED** as against Stone Bank. Count Two against Stone Bank for conversion of Lippe's home insurance proceeds remains.

- Separate Defendant Stone Bank's Motion to Strike (Doc. 145) is **DENIED**.

- The following pending motions are now **MOOT**:

    - Johnson's Motion for Summary Judgment on Conversion Claim (Doc. 142);

    - Stone Bank's Third Motion for Partial Summary Judgment (Doc. 168);

    - Stone Bank's Fourth Motion for Partial Summary Judgment (Doc. 200);

    - Johnson's Motion for Summary Judgment on Felony Tort Claim (Doc. 208); and

    - Lippe's Motion for Extension of Time to File Response to Johnson's Motion for Summary Judgment on Felony Tort Claim (Doc. 215).

**IT IS SO ORDERED** on this 13th day of July, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE