IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**NATHAN LIPPE**                                                                                                      **PLAINTIFF**

V.                                              **CASE NO. 3:21-CV-03043**

**STONE BANK**                                                                                                      **DEFENDANT**

## OPINION AND ORDER

Currently before the Court are Defendant Stone Bank's Motion for Order Declaring Requests for Admission Deemed Admitted (Doc. 227) and Second Motion for Partial Summary Judgment (Doc. 163).[1] Plaintiff Nathan Lippe opposes the Bank's Motion for Partial Summary Judgment but has filed no opposition to the Motion for Order Declaring Requests for Admission Deemed Admitted.

For the reasons stated below, both pending Motions are **GRANTED**, and this case is **DISMISSED WITH PREJUDICE.**

## I. MOTION FOR ORDER DECLARING REQUESTS FOR ADMISSION DEEMED ADMITTED

On June 1, 2022, Stone Bank served on Lippe its Ninth Set of Requests for Admission. Lippe's responses were due by July 1. On July 1, Lippe moved for additional time to file his responses, and the Court granted that motion, allowing Lippe until July 8

---

[1] The Court considered the following materials in deciding these motions: Stone Bank's Memorandum Brief in Support of Motion for Order Declaring Requests for Admission Deemed Admitted (Doc. 228), Stone Bank's Memorandum Brief in Support of Second Motion for Partial Summary Judgment (Doc. 167), Statement of Facts in Support of Second Motion for Partial Summary Judgment and attached exhibits (Doc. 164), Stone Bank's sealed exhibits (Docs. 165 & 166), Plaintiff Nathan Lippe's Response to Stone Bank's Second Motion for Partial Summary Judgment (Doc. 193), Lippe's Brief in Support (Doc. 194), and Stone Bank's Reply (Doc. 197). The Court has also considered several previous filings in this case that the parties have incorporated by reference into their summary judgment briefing.

1

to respond. *See* Doc. 220. Stone Bank asserts Lippe never provided any responses to the Requests for Admission. Stone Bank asks the Court to deem that Lippe has admitted to each matter stated in the Requests for Admission.

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Lippe failed to respond to the Requests for Admission and has not provided any explanation for this lapse. Therefore, the Court finds that each matter in Stone Bank's Ninth Set of Requests for Admission has been admitted by Lippe.

## II. SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Background

On July 13, 2022, the Court granted the motions to dismiss filed by separate Defendants Marvin Sutterfield and James Johnson and partially granted Stone Bank's motion to dismiss. *See* Doc. 224. That leaves just one cause of action and one defendant in this case: Lippe's claim that—following the destruction of his home in a fire—Stone Bank converted Lippe's home insurance proceeds by applying those proceeds to pay down certain of Lippe's other loans with the Bank without Lippe's consent. Stone Bank now seeks summary judgment on that remaining claim.

A party moving for summary judgment bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The Court must view the facts in the light most favorable to the

2

opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997).

Lippe did not file a responsive statement of facts to either Stone Bank's instant Second Motion for Partial Summary Judgment or Stone Bank's original Motion for Summary Judgment (Doc. 50) (incorporated by reference into the instant Motion). Therefore, under Local Rule 56.1(c), all facts stated in Stone Bank's statements of fact (Docs. 51 & 164) are deemed admitted by Lippe. Those facts, as relevant to this Motion, are as follows.[2]

In April 2017, Lippe obtained the Home Loan, Loan No. **6376, from Stone Bank. Lippe contemporaneously executed a Mortgage in favor of the Bank, granting the Bank a lien on the property where Lippe's home was situated. The Mortgage included a "Secured Debts" provision defining the debts secured by the Mortgage:

> **3. SECURED DEBTS.** The term "Secured Debts" includes and this Security instrument will secure each of the following:
> **A. Specific Debts**. The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. **6376, dated April 13, 2017, from Mortgagor to Lender, with a loan amount of $100,000.00 and maturing on April 13, 2020. THIS LOAN IS ALSO CROSS COLLATERALIZED WITH LOAN #**5554, **5782, **6035, AND **6036
> **B. All Debts.** All present and future debts from Mortgagor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. . . .

(Doc. 164, p. 15). The Mortgage goes on to provide that "[a]ll insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option." *Id.* at p. 21.

---

[2] The Court directs the reader to the Court's previous opinions (Docs. 199 & 224) for a more complete account of the facts and procedural history in this case.

3

In September 2019, Lippe's home burned to the ground. Stone Bank requested and received from Lippe's insurance company $183,000 in insurance proceeds from the lost residence. The Bank, without seeking Lippe's consent, applied the insurance proceeds to pay down four of Lippe's outstanding loans.

## B.  Discussion

Conversion is "the wrongful possession or disposition of another's property," and "a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights." *Hatchell v. Wren*, 363 Ark. 107, 116–17 (2005) (citing *McQuillan v. Mercedes–Benz Credit Corp.*, 331 Ark. 242 (1998)). Stone Bank argues the Mortgage authorized the Bank to possess and use the insurance proceeds and therefore its actions were not "wrongful" as a matter of law. Lippe argues there is a material factual dispute over whether the loans Stone Bank paid down using the insurance proceeds were secured by the Mortgage.

"Arkansas law provides that parties to a loan transaction may agree that a mortgage or security agreement given to secure a particular debt may also, by its terms, secure existing or future debt." *Equity Bank v. Southside Baptist Church of Lead Hill*, 2020 Ark. App. 199, 4 (2020). However, a mortgage will only be construed to secure debts that were "specifically contemplate[d]" by the debtor. *Id.* at 5 (citing *Hendrickson v. Farmers' Bank & Tr. Co.*, 73 S.W.2d 725, 729 (1934)). The mortgage must identify debts created prior to the mortgage—antecedent debts—in "clear terms" for those debts to be secured by the mortgage. *Hendrickson*, 73 S.W.2d at 729. Future debts, "being not yet in existence," cannot always be clearly identified. *Id.* at 729. Therefore, courts must consider whether the debtor assented to the mortgage securing a future debt. *See id.*

4

This inquiry is case-specific and depends on the surrounding circumstances and the language used in the instrument. *Am. Bank & Tr. Co. v. First Nat. Bank*, 43 S.W.2d 248, 250 (1931). Courts consider whether the mortgage "describe[d] the nature and character" of the future debt "so that both the debtor and third parties [were] fully advised as to the extent of the mortgage." *Id.* at 251. Where the mortgage contains "unambiguous language" securing a future debt, the debtor's assent to the mortgage's terms may be clear. *In re Dorsey Elec. Supply Co.*, 344 F. Supp. 1171, 1175 (E.D. Ark. 1972). Absent such unambiguous language, however, the secured future debts "must be of the same class and so related to the primary debt secured that the assent of the mortgagor will be inferred." *Hendrickson*, 73 S.W.2d at 729.

Here, the Mortgage's "All Debts" provision secured "[a]ll present and future debts from Mortgagor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt." (Doc. 164, p. 15). This provision may not be sufficiently specific to secure antecedent debts that are not specifically referenced in the Mortgage. *See Equity Bank*, 2020 Ark. App. at 5. However, for future debts, the provision explicitly extends to all future loans between the Bank and Lippe, including those "unrelated to or of a different type than" the Home Loan. This language was unambiguous and conspicuously placed. At the time of execution of the Mortgage, Lippe had outstanding business loans from Stone Bank, at least two of which were explicitly secured by the Mortgage. Therefore, the "All Debts" provision of the Mortgage was sufficient to put Lippe and third parties on notice of the "nature and character" of the debts—to include Lippe's future business loans—that would be secured by the Mortgage. Moreover, in a prior lawsuit between Lippe and Stone Bank in Arkansas

state court, Lippe signed a consent judgment wherein he agreed that the Mortgage secured repayment of *all* his loans with the Bank. *See* Doc. 51, p. 126.

Having found that the Mortgage unambiguously secured all future debts Lippe might incur with Stone Bank, the Court turns to the Bank's application of the $183,000 in home insurance proceeds to Lippe's outstanding debts. The Bank applied the proceeds as follows:

- $92,257.67 to the Home Loan, Loan No. **6376, paying off that loan;
- $50,530.80 to a USDA-backed business loan ("the Farm Loan"), Loan No. **7679, leaving a principal balance of $451,028.29;
- $20,530.80 to an otherwise unsecured loan, Loan No. **7807, paying off that loan; and
- $19,389.61 to a loan secured by cattle and equipment, Loan No. **7810, paying off that loan.

The Home Loan was the primary debt secured by the Mortgage. The Farm Loan, the unsecured loan, and the cattle and equipment loan were all issued after the Mortgage was executed in April 2017. The Farm Loan was issued in June 2018, and the unsecured loan and cattle and equipment loan were both issued in August 2018. Therefore, each loan was "future debt" secured by the Mortgage's "All Debts" provision.[3]

---

[3] The Farm Loan refinanced six of Lippe's existing business loans, four of which were issued by Stone Bank and two of which were issued by First National Bank of North Arkansas. The four Stone Bank loans were either specifically secured by the Mortgage (Loan Nos. **5782 and **6036) or were originated after the Mortgage was executed (Loan Nos. **6588 and **7174). The record does not appear to indicate the origination dates of the two First National Bank of North Arkansas loans that were refinanced into the Farm Loan. Regardless, the Farm Loan is "future debt" under the Mortgage because refinancing is "[a]n exchange of an old debt for *a new debt*." *Refinancing*, Black's Law Dictionary (11th ed. 2019) (emphasis added).

Because the Mortgage authorized Stone Bank to use the insurance proceeds to pay down any debt secured by the Mortgage, its possession and use of the proceeds was not wrongful and cannot constitute conversion as a matter of law.

### III. CONCLUSION

For the reasons stated above, Stone Bank's Motion for Order Declaring Requests for Admission Deemed Admitted (Doc. 227) and Second Motion for Partial Summary Judgment (Doc. 163) are **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. Judgment will enter contemporaneously with this opinion.

**IT IS SO ORDERED** on this 16th day of September, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE